UNITED STATES BANKRUPTCY COURT
DISTRICT OF NORTH DAKOTA

In re:                                                                      Bankruptcy No. 07-30227
                                                                            Chapter 7
Adam T. Rouse

           Debtor.
_____/

Adam T. Rouse,

           Plaintiff,

      vs.                                                             Adversary No. 07-7014

SLND-Bank of North Dakota; and
Student Loan Finance Corporation of
Aberdeen, SD,

           Defendants.
_____/

**MEMORANDUM AND ORDER**

This adversary proceeding was commenced by Debtor/Plaintiff Adam T. Rouse by Complaint filed July 3, 2007. Debtor seeks a determination that excepting his outstanding student loan obligations from discharge would impose an undue hardship under section 523(a)(8) of the Bankruptcy Code. Defendants did not file an answer. The Court entered an Order granting default judgment on August 30, 2007. Defendant SLND-Bank of North Dakota ("SLND") subsequently filed a Motion to Reopen Adversary Proceeding, Set Aside and Vacate Judgment, and Dismiss Action on December 14, 2007. Debtor filed his response on December 28, 2007. A trial was held on August 6, 2008, regarding the dischargeability of Debtor's student loans owed to Defendant SLND.

The Court makes the following Findings of Fact and Conclusions of Law:

I. FINDINGS OF FACT

Debtor is a divorced 34-year-old man. Debtor graduated from Elgin Public High School in 1992. He attended Bismarck State College and recieved a two-year Associate in Applied Science Degree (AAS) in electronics in 1994. Debtor obtained Federal Stafford subsidized loans in the amount of $4,098.00 from SLND to pay for his educational expenses while attending school at Bismarck State College. Debtor testified that he gained employment following graduation utilizing his degree and was employed at Fireside Office Solutions from 1994 to 1997 repairing computers and laser printers.

In 1997, Debtor enrolled at the University of North Dakota (UND) in aviation classes with the aspiration of becoming a commercial airline pilot. Debtor attended UND for approximately 2 years. Debtor obtained Federal Stafford subsidized and unsubsidized loans in the amount of $15,000 and Dakota Education Alternative Loans (DEAL) loans in the amount of $7,486.00 while attending school at UND.

Debtor testified that he became increasingly depressed while attending UND and sought help at the clinic on campus. Medical records from Altru Health System (Altru), dated May 19, 1999 through June 24, 1999, reflect Debtor sought treatment with nurse practitioner Jean Gullicks based upon a referral from Dr. Susan Thompson, a neurologist. Altru medical records also reflect that Dr. Thompson concluded that Debtor "most probably had ADHD and was in need of medical treatment".[1] Debtor complained of symptoms including depression, physical restlessness, sleep problems, feeling "real fuzzy", being easily distracted, and suicidal yearnings. Altru medical records report that Debtor has had a diagnosis of depression in the past and that Debtor reported taking

---

[1] ADHD is an acronym for attention deficit hyperactivity disorder.

2

Zoloft for depression and switched to Paxil in December 1998. Debtor reported he discontinued Paxil because he did not like some of the sexual side effects but his mood improved while taking antidepressants. Gullicks prescribed Amitriptyline for Debtor to help with sleep. Debtor took Amitriptyline for approximately one week and discontinued without consulting a physician. On June 17, 1999, Debtor was prescribed Effexor, an antidepressant, and Adderall, which is indicated for the treatment of ADHD. Altru medical records reflect that Debtor's ADHD was under control and that Debtor's affect was much better regarding his depression with treatment of Adderall and Effexor. Debtor testified that he was subsequently informed he would not pass the federal aviation medical certification necessary for becoming a pilot due to his medical history. At that point in time, Debtor moved back to Elgin, North Dakota.

Debtor sought treatment again on September 7, 1999. By then, he had discontinued taking his prescribed antidepressant, Effexor, and Dr. Steven Scherr at Mid Dakota Clinic wrote Debtor a prescription for Paxil. Debtor attended regular therapy sessions at West Central Human Service Center from October 1999 through July 2001. Debtor was prescribed various prescription drugs to treat his symptoms and switched brands at various times due to side effects. Debtor had marked improvement with prescription medication.

In the fall of 1999, Debtor enrolled in classes at the University of Mary in pursuit of a psychology degree and worked part time at Fireside Office Solutions. He attended classes for three semesters but did not earn a degree. Debtor obtained Federal Stafford subsidized and unsubsidized Loans in the amount of $21,000.00 and DEAL loans in the amount of $7,486.00 while attending the University of Mary.

Debtor married in February 2001 and moved to Wolf Point, Montana. Debtor gained employment at Will's Office World repairing office equipment.

On August 29, 2001, Debtor was admitted to Mercy Medical Center in Williston, North Dakota, for depression and suicidal ideation. Debtor reported he was worried about finances and was having domestic issues with his wife. He was treated for depression and prescribed Depakote ER, Wellbutrin SR and Serzone. His mood improved while on the medications and he was released on September 1, 2001. The principal diagnosis was bipolar disorder, manic type, and the secondary diagnosis was major depression, recurrent. A followup appointment was scheduled for September 4, 2001, with group therapy recommended. Debtor attended the followup appointment and medication was prescribed.

Debtor divorced in 2002 and moved to Bismarck. Debtor was employed at Capital Janitorial for a few months and then became employed at Midwest Business Systems. His duties included fixing office equipment as a photocopy repair technician. Debtor sought treatment at West Central Human Service Center in June 2002, as he noted problems with mood and had again discontinued taking his prescribed medications. Debtor was again prescribed medication. In followup appointments, Debtor reported improved mood after taking medications.

Debtor testified that he worked hard, put in overtime and was promoted into management as a Service Manager at Midwest Business Systems. Debtor was later demoted due to a lack of focus and returned to his old position as a technician for two years. Debtor testified that from 2002 to 2008 he turned his back on medical treatment. In March 2008, Debtor was fired for being late. Debtor testified that he felt he could perform the responsibilities of the job but was easily distracted in the morning and sometimes arrived late to work.

On March 4, 2008, Debtor again sought treatment at West Central Human Services Center reporting that he was feeling down. Once again, Debtor reported he was not taking prescribed medication and that he had just stopped using marijuana approximately a week and a half earlier. Debtor's March 10, 2008, appointment revealed that Debtor reported feeling calmer and more in control after being on medication again. Debtor testified, however, that the medication "makes his mind fuzzy."

Debtor testified he worked at Denny's for a month as a dishwasher until he found his current job at Connecting Point Computer Center. His job responsibilities are similar to his previous work fixing laser printers. His current employment also has the additional responsibility of hanging interactive boards in schools. Debtor testified that he is optimistic about maintaining this job. Based upon Debtor's affidavit, Debtor's net monthly income is approximately $1,930.79. Debtor's current wage is $12.50 an hour, and he has the opportunity to work overtime some months. Debtor further testified that he is optimistic that he will receive a pay raise of 50¢ to $1.00 an hour in the near future. Debtor testified that he does not know if there are any better employment opportunities for him but testified that he is registered with Job Service to keep informed when new opportunities become available. Debtor also testified he has a positive outlook regarding his future.

Debtor lists his monthly expenses as $1,887.00 in Schedule J of his bankruptcy petition. However, in his affidavit of income and expenses, Debtor lists his monthly expenses in the total amount of $2,115.00 as follows:

| | |
|---|---|
| Rent | $460.00 |
| Food | $450.00 |
| Utilities | $160.00 |

5

| | |
|---|---|
| Phone | $ 80.00 |
| Laundry | $ 10.00 |
| Clothing | $ 50.00 |
| Hygiene/Haircuts | $ 25.00 |
| Household supplies | $ 10.00 |
| Tax Preparation | $  7.00 |
| Out of pocket med exp | $ 35.00 |
| Transportation | $200.00 |
| Auto Fund | $200.00 |
| Child support | $100.00 |
| Related support expenses | $200.00 |
| Pet care | $ 10.00 |

After a review of his monthly checking account statements, Debtor conceded that his actual monthly expenses average $1,939.00. Debtor testified that he owns a 1994 Jeep Cherokee with 166,000 miles and has an auto fund for a future vehicle.

David Plum, supervisor of Preclaims and Collections for SLND, testified that he supervises the division that assists lenders in calling borrowers in an attempt to prevent default and to assist in collection when borrowers have defaulted. Plum testified that Debtor consolidated a series of his Stafford loans with a repayment term of $293.90 per month for 292 months and that an income contingent option is not available under Debtor's choice of consolidation. Plum testified that an income contingent option is available, however, through the Federal Direct Loans Consolidation Plan. If Debtor consolidated under Federal Direct Loans, repayment would be extended for 25

years and if a balance remains after 25 years, the debt would be forgiven. Plum further testified that under Debtor's current loan structure there are two repayment options: the standard option and the income-sensitive plan.  Under the standard option, Debtor's monthly payments would be $285.00 for his consolidated loans and $248.64 for his DEAL loans.  Under the income-sensitive option, Debtor's monthly payments would be approximately $175.00 for the consolidated loans and $130.00 for his DEAL loans totaling $305.00 a month. Plum testified that based on the information provided at the trial, Debtor could potentially qualify for the income-sensitive plan. Debtor would need to provide proof of income to be considered for the lower payment plan option.  Once qualified, the income-sensitive option is available for 5 years and then reverts back to the standard plan.

Plum also testified that Debtor's DEAL loans are guaranteed by SLND and funded by the Bank of North Dakota.  Debtor has made periodic payments on the consolidated loan since the loans went into repayment status but has not made payments on the DEAL loans.  The majority of the time the loans have been  in forbearance.

On January 28, 2008, SLND filed proof of claim relating to Debtor's student loans in the amount of $70,827.34.  Debtor's amended schedules dated July 3, 2007 list Debtor's total unsecured debt as $79.816.00.

## II.  CONCLUSIONS OF LAW

Section 523(a)(8) states that any debt resulting from an educational loan made, insured or guaranteed by a governmental agency is excepted from the debtor's general discharge unless "excepting such debt from discharge . . . will impose an undue hardship on debtor and debtor's dependants."  The debtor has the burden of establishing by a preponderance of the evidence that excepting her student loan debt from discharge will impose an undue hardship.  <u>Cumberworth v.</u>

7

United States Dep't of Educ. (In re Cumberworth), 347 B.R. 652, 657 (B.A.P. 8th Cir. 2006). The Eighth Circuit's test for undue hardship requires an evaluation of the totality of the circumstances. Reynolds v. Pennsylvania Educ. Assistance Agency (In re Reynolds), 425 F.3d 526, 532 (8th Cir. 2005). The totality of the circumstances include: (1) the debtor's past, present, and reasonably reliable future financial resources; (2) a calculation of the debtor's and his dependents' reasonably necessary living expenses; and (3) any other relevant facts and circumstances surrounding each particular bankruptcy case. Id.

A.    Financial Resources

With regard to Debtor's past financial resources, the majority of his past employers have been office equipment and computer repair companies where he has been able to utilize his two-year associate degree in electronics. Debtor has also progressed into management in the past. With regard to his present resources, Debtor has demonstrated that he is capable of obtaining employment in the area of study in which he earned his two-year degree. He currently has a position as a technician and is skilled, experienced and marketable for employment in the area of electronic repair. Debtor is currently single and has no dependents living in his household. SLND's suggestion that Debtor could maximize his income by pursuing management positions is reasonable. Debtor's income is $1,930.79 per month and it is very possible that Debtor's income could increase in the future by promotion or overtime. Debtor testified that he is optimistic that he will receive a pay raise of .50¢ to $1.00 an hour in the near future.

This Court has held that student loan dischargeability requires a hardship more severe than mere unpleasantness. Randall v. Norwest Student Loan Serv. (In re Randall), 255 B.R. 570, 577 (Bankr. D.N.D. 2000). The hardship must present a certainty of hopelessness and not a mere present

inability to meet financial commitments due to a current, temporary state of unemployment. Id. In In re Randall, the debtor was a 35-year-old licensed attorney who suffered from chronic pain syndrome and fibromyalgia. Id. at 578. The Court held that although her present economic situation was grim, her law degree and age precluded a finding that her situation could not be expected to improve significantly in the future because her distinguished legal education and other skills made her very marketable. Id. In this case, Debtor's present economic situation is tight. However, his age and potential for advancement in the future preclude this Court from finding that his situation is hopeless.

From a review of Debtor's past and present financial resources, the Court concludes that it is not unrealistic to expect an increase in his future financial resources. He appears to be marketable with his two-year degree. Although it is undisputed Debtor has ADHD and depression, Debtor repeatedly reports an improved and stable disposition when he takes his medication as prescribed. If Debtor consistently takes his medication as directed, the prospect of Debtor maintaining gainful employment is very likely.

B.    Living Expenses

Reviewing Debtor's monthly expenses, the Court finds that his estimated expenses totaling $1,939.00 per month are, for the most part, reasonable and necessary. However, Debtor has a "car fund" of $200.00 per month. Debtor currently owns a 1994 Jeep Cherokee, and although it has high miles, setting aside $200.00 per month as a slush fund for the future purchase of a vehicle at this time is not a necessary expense. This expense alone would cover two-thirds of student loan monthly payment in the amount of $305.00. Debtor also claims $450.00 a month for food expense for a household of one.

C.     Other Circumstances

The third prong of the totality-of-the-circumstances test involves consideration of any other relevant fact or circumstance surrounding the particular bankruptcy case. Courts in the Eighth Circuit, including this Court, have applied a number of facts and circumstances in making this determination including: (1) total present and future incapacity to pay debts for reasons not within the control of the debtor; (2) whether the debtor has made a good faith effort to negotiate a deferment or forbearance of payment; (3) whether the hardship will be long-term; (4) whether the debtor has made payments on the student loan; (5) whether there is permanent or long-term disability of the debtor; (6) the ability of the debtor to obtain gainful employment in the area of the study; (7) whether the debtor has made a good faith effort to maximize income and minimize expenses; (8) whether the dominant purpose of the bankruptcy petition was to discharge the student loan; and (9) the ratio of student loan debt to total indebtedness. Poe v. Pennsylvania Higher Educ. Assistance Agency (In re Poe), 354 B.R. 265, 269 (Bank. W.D. Mo. Nov. 8, 2006); Randall v. Norwest Student Loan Serv. (In re Randall), 255 B.R. 570 , 577 (Bankr. D.N.D. 2000).

Although Debtor has made periodic payments toward his consolidated student loans, he has not made a payment on his DEAL loans. Additionally, Debtor has not applied for income contingent consolidation or for an income-sensitive repayment option. But See Cheney v. Education Credit Mgmt. Corp. ( In re Cheney), 280 B.R. 648, 666 (N.D. Iowa 2002) (stating that repayment plan is "no silver bullet for student loan creditors to avoid discharge of student loan debts owing to undue hardship if the creditors fail to advise particular debtors of that or comparable programs and assist the debtors with pursuing them").

Next, Debtor lists total unsecured debt in the amount of $79,816.00. SLND filed a proof of claim relating to Debtor's student loans in the amount of $70,827.34; the student loan debt is therefore 89% of Debtor's total unsecured debt. This fact does not weigh in Debtor's favor because it appears that the dominant purpose of Debtor's bankruptcy filing was to discharge his student loans. See Lee v. Regions Bank & Student Loan Guar. Found. of Ark. (In re Lee), 345 B.R. 911, 918 (Bankr. W.D. Ark. 2006) (stating that when a debtor attempts to discharge debts that are principally student loans, a court can infer that discharging the student loans was the dominant purpose of the bankruptcy filing).

While Debtor is currently in a difficult financial situation, there is no evidence that Debtor's situation is hopeless, nor is there evidence his situation will continue indefinitely into the future. Based upon his degree, skills and experience, the prospect of Debtor obtaining a higher paying job in the future is good, provided that Debtor follows the advice of his prescribing physicians. Requiring Debtor to pay back his student loans does not impose an undue hardship. For these reasons, Debtor's outstanding obligation to Student Loans of North Dakota in the amount of $70,827.34 is nondischargeable under 11 U.S.C § 523(a)(8).

**SO ORDERED.**

**JUDGMENT MAY BE ENTERED ACCORDINGLY.**

Dated this September 5, 2008.

**WILLIAM A. HILL, JUDGE**
**U.S. BANKRUPTCY COURT**